**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

ALEXANDRA PATRICE BERTOLOTTI,
            Plaintiff,

v.                                                    CIVIL  ACTION  NO.  3:09-0952

DR. SANDRA PRUNTY, and
MARSHALL UNIVERSITY,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion for Partial Dismissal by Defendant Dr. Sandra

Prunty and Marshall University.  Plaintiff Alexandra Patrice Bertolotti opposes the motion.  For the

following reasons, the Court **GRANTS, in part,** and **DENIES, in part**, Defendants' motion.  [Doc.

No. 46].

**I.
FACTUAL AND PROCEDURAL HISTORY**

On August 20, 2009, Plaintiff, acting pro se, filed a "Petition for Injunctive Relief"

against the current Defendants and a host of other individuals associated with Marshall University.

On August 24, 2009, Plaintiff filed an Amended Petition.  Treating the Petition as a motion for a

temporary restraining order, the Magistrate Judge set the case for an injunctive hearing the next day.

On August 26, 2009, the Magistrate Judge made Findings and Recommendation that Plaintiff's

likelihood of success was not established, she did not demonstrate she would suffer an irreparable

injury, and there was no indication that the public interest lies with granting Plaintiff the relief she

seeks.  Therefore, the Magistrate Judge recommended that the motion for the temporary retraining

order be denied.  Neither party objected to the Findings and Recommendation so, on September 17, 2009, this Court accepted and incorporated the Magistrate Judge's decision.

Thereafter, Plaintiff obtained counsel who filed a Notice of Appearance in the case, and filed a motion to amend the Complaint.  Before that motion was ripe, counsel filed a motion to file a Second Amended Complaint, which eliminated all of the previously named Defendants except Dr. Sandra Prunty and Marshall University[1] and clarified her claims against them.  The Court granted the motion, and Defendants Marshall University and Dr. Prunty subsequently filed a Motion for Partial Dismissal of the Second Amended Complaint.

In her Second Amended Complaint,[2] Plaintiff asserts she is a nursing student at Marshall University.  Marshall University is a public institution which receives both state and federal funds.  Dr. Prunty is an associate professor in the University's College of Health Professions.  Plaintiff claims that, at all relevant times, the University was aware she has a hearing loss that substantially limits one or more of her major life activities and requires her to wear a hearing aid.

In the Spring of 2009, Plaintiff was enrolled in a course known as Nursing 319, which was taught by Dr. Prunty.  Nursing 319 is a prerequisite course for Nursing 323, and a student must receive a score of at least 75% in Nursing 319 before the student can enroll in Nursing 323.  Plaintiff

---

[1]Ultimately, the parties entered a stipulation of dismissal to those named in the original Complaint but not named in the Second Amended Complaint.  Given that stipulation and the Second Amended Complaint, the Court denied as moot two pending motions to dismiss.

[2]Plaintiff's Second Amended Complaint is simply entitled Amended Complaint.

claims she sat in the front of the class, but she had a difficult time hearing Dr. Prunty and could not read her lips because she has virtually no lip movement when she speaks. At the end of the first class, Plaintiff informed Dr. Prunty of her hearing impairment. Plaintiff asserts Dr. Prunty responded by ridiculing her in front of another student for enrolling in the nursing program and questioning her ability to properly assess a patient's health. The other student purportedly informed Dr. Prunty that Plaintiff already had purchased a special stethoscope to make patient assessments. Nevertheless, Plaintiff claims that Dr. Prunty continued to question her in a hostile and demeaning tone about her ability to become a nurse and did not offer to make any reasonable accommodations for her. Plaintiff states that "Dr. Prunty's harassment, ridicule and demeaning tone coerced and humiliated . . . [her] into making the decision to not pursue any reasonable accommodations from the University or Dr. Prunty in a conscious effort to avoid further ridicule and harassment from Dr. Prunty" or from any other nursing professor who may harbor Dr. Prunty's views about individuals with hearing impairments. *Amended Complaint*, at ¶ 23. She claims she became depressed, missed classes, gained weight, and slept excessively because of Dr. Prunty's comments. She further states she sought professional help to deal with her depression.

As she was provided no accommodation, Plaintiff asserts she struggled academically and fell short of the grade required to pass Nursing 319 by less than one-half of one percent. Upon learning of her score, Plaintiff and her father requested Dr. Prunty review her final test and rescore one of her answers they believed was marked incorrectly. Although Plaintiff contends Dr. Prunty had considerable discretion in adjusting grades, she refused to do so in Plaintiff's case. Plaintiff then appealed her grade to University officials and detailed the alleged harassment and discriminatory

comments Dr. Prunty made to her.  However, Plaintiff's appeal was unsuccessful and it, thus, precipitated this lawsuit.

In her lawsuit, Plaintiff states three separate causes of action.  In Count 1, she asserts that Marshall University is liable to her under the American with Disabilities Act (ADA) and the Rehabilitation Act of 1973, as amended, for Dr. Prunty's actions under the doctrine of respondeat superior.  In Count II, Plaintiff argues both Marshall University and Dr. Prunty, in her individual capacity, are liable because Dr. Prunty interfered with her rights to benefits secured under Section 504, Title II of the Rehabilitation Act and her actions violated the anti-harassment provision of that Act.  In Count III, Plaintiff also claims damages against both Defendants for intentional infliction of emotional distress.  Defendants move to dismiss these claims.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563.  In its place, courts must now look for "plausibility" in the complaint.  This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. (internal quotation marks and citations omitted).  Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the

-4-

point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 129 S. Ct. at 1949 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 1950. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

-5-

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

### III.
### DISCUSSION

#### A.
#### ADA and Rehabilitation Act Claims

In *Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999), the Fourth Circuit recognized that "[t]he ADA and the Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." 192 F.3d at 468 (citation omitted). However, the Fourth Circuit stated that sometimes statutory provision differences between the two Acts dictate different interpretations. *Id.* at 469 (citation omitted). Plaintiff asserts that her ADA claim in Count I against Marshall University and her Rehabilitation Act claim in Count II against Marshall University and Dr. Prunty, in her individual capacity, should be analyzed under 42 U.S.C. § 12203(b) of Title V of the ADA. This section provides:

> (b) Interference, coercion, or intimidation
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b). Although the Rehabilitation Act does not have a specific interference, coercion, or intimidation provision like that found in § 12203(b), the Rehabilitation Act does incorporate the same remedies provided under Title VI of the Civil Rights Act. *See* 29 U.S.C.

-6-

§ 794a(2).[3]  Under § 601 of Title VI, "[n]o person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.

§ 2000d.  In addition, the Department of Education passed a regulation which prohibits intimidatory

or retaliatory acts by providing, in part, that "[n]o recipient or other person shall intimidate, threaten,

coerce, or discriminate against any individual for the purpose of interfering with any right or

privilege secured by section 601 of the Act or this part[.]" 34 C.F.R. § 100.7(e), in part.


                To establish a prima facie case of interference, coercion, or intimidation under 42

U.S.C. § 12203(b) and 34 C.F.R. § 100.7(e), Plaintiff argues she must demonstrate: "(1) she engaged

in a protected activity, (2) the defendant's retaliatory action was sufficient to deter her from

exercising her rights, and (3) that there was a causal connection between the protected activity and

the retaliatory action." *Plaintiff's Response to Partial Motion to Dismiss*, at 9-10 (citing *Lauren W.*

*ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 268 (3d Cir. 2007)).  Defendants respond by stating

that, not only does Plaintiff rephrase the second prong of *Lauren W.* from an objective to a

------

[3]Section 794a(2) provides:

> The remedies, procedures, and rights set forth in title
> VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d
> et seq.) . . . shall be available to any person aggrieved
> by any act or failure to act by any recipient of Federal
> assistance or Federal provider of such assistance
> under section 794 of this title.

29 U.S.C. § 794a(2), in part.

-7-

subjective standard,[4] but it is the law of the Fourth Circuit, not Third Circuit, that must control this Court's analysis.  The Court agrees with Defendants.

The Fourth Circuit has held that "[i]n order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001)).  Plaintiff asserts she meets the first prong of this test because she approached Dr. Prunty to inform her about her hearing impairment in an attempt to secure a reasonable accommodation.  Thus, she was engaged in a protected activity.  Plaintiff argues she meets the second prong of the test because Dr. Prunty's ridiculing, intimidating, and coercive remarks about Plaintiff's ability to be a nurse coerced Plaintiff from pursing any reasonable accommodation.  Lastly, Plaintiff states a causal link between the protected activity and the retaliatory action clearly exists because Dr. Prunty's remarks were made immediately after, and in direct response to, Plaintiff informing her that she is hearing impaired.  Therefore, taking the evidence in the light most favorable to Plaintiff, she argues she has stated a prima facie case of retaliation.

---

[4]The Third Circuit Court of Appeals actually stated in *Lauren W.* that a prima facie case is established if the plaintiff can show "(1) that . . . [she] engaged in a protected activity, (2) *that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights*, and (3) that there was a causal connection between the protected activity and the retaliatory action." 480 F.3d at 267 (citation omitted).

Defendants respond by insisting Plaintiff has failed to state a claim because she admits that she consciously chose not to seek a reasonable accommodation. Defendants interpret this admission as Plaintiff failing to engage in any protected activity. However, the Court will not read Plaintiff's Second Amended Complaint so narrowly. Plaintiff's allegation is that *she engaged in a protected activity* when, in accordance with the class syllabus, she approached Dr. Prunty after class to inform her of her hearing impairment so a reasonable accommodation could be made. Plaintiff claims it was because of Dr. Prunty's hostile and demeaning response that she felt she could not pursue a reasonable accommodation. Assuming these allegations to be true, and in light of the plausibility standard found in *Twombly* and *Iqbal,* the Court finds that Plaintiff's allegations are sufficient to survive a motion to dismiss. Therefore, the Court **DENIES** Defendants' Motion to Dismiss Counts I and II on this basis.

### B.
### Individual Liability

Next, Defendant asserts Count II must be dismissed against Dr. Prunty in her individual capacity because the Rehabilitation Act does not allow personal liability claims. On the other hand, Plaintiff argues Congress intended both the ADA and the Rehabilitation Act to allow for personal liability in retaliation suits. In support of its position, Plaintiff cites *Alston v. District of Columbia*, 561 F. Supp.2d 29 (D.D.C. 2008), which held "individuals may be sued in their personal capacities for retaliation under the ADA and the Rehabilitation Act." 561 F. Supp.2d at 42. However, in doing so, the district court recognized the Fourth Circuit reached the opposite conclusion in *Baird*. *Id*. at 41. Plaintiff argues that *Baird* is not applicable because it analyzed 42 U.S.C. § 12203(a), rather than subsection (b) and 34 C.F.R. § 100.7(e) which are the provisions at issue in this case. Plaintiff then proceeds to suggest that the plain language of § 12203(a), which

-9-

states "[n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . " suggests an individual may be held personally liable. In *Baird*, the Fourth Circuit specifically rejected this argument and determined Congress limited the remedies available in ADA retaliatory conduct cases to those remedies available under Title VII which does not allow any remedy against individual defendants. 192 F.3d at 472. This Court is bound by this decision and, therefore, finds Dr. Prunty cannot be held individually liable under § 12203(b) or 34 C.F.R. § 100.7(e). Accordingly, the Court **GRANTS** Defendants' motion to dismiss Dr. Prunty in her individual capacity.

## C.
## INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS

Defendants also move to dismiss Count III against Marshall University and Dr. Prunty. With respect to the claim against Marshall University, Defendants argue it is barred by the Eleventh Amendment. In her Response, Plaintiff concedes that her claim is barred. Thus, the Court **GRANTS** Defendants' motion to dismiss this claim against Marshall University. To the contrary, Plaintiff asserts her claim against Dr. Prunty is proper and survives Defendants' motion. Upon review, the Court disagrees with Plaintiff.

The West Virginia Supreme Court first recognized a claim for intentional infliction of emotional distress (also known as the tort of outrage) in *Harless v. First National Bank*, 169 W. Va. 673, 289 S.E.2d 692 (1982),when it said: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. Pt. 6,

-10-

*Harless*.  "[T]he hallmark of this tort . . . is intentional and outrageous conduct." *Id*. at 694, 289

S.E.2d at 704.  The conduct must be,

> so outrageous in character, and so extreme in degree,
> as to go beyond all possible bounds of decency, and
> to be regarded as atrocious, and utterly intolerable in
> a civilized community. Generally, the case is one in
> which the recitation of the facts to an average member
> of the community would arouse his resentment
> against the actor, and lead him to exclaim,
> 'Outrageous!'

*Tanner v. Rite Aid of West Virginia, Inc.*, 194 W. Va. 643, 651, 461 S.E.2d 149, 157 (1995) ( quoting

Restatement (Second) of Torts § 46(1) Comment (d) (1965)).

Under West Virginia law, a plaintiff must establish four elements in order to prevail

on a claim for intentional or reckless infliction of emotional distress.  These elements are:

> (1) that the defendant's conduct was atrocious,
> intolerable, and so extreme and outrageous as to
> exceed the bounds of decency; (2) that the defendant
> acted with the intent to inflict emotional distress, or
> acted recklessly when it was certain or substantially
> certain emotional distress would result from his
> conduct; (3) that the actions of the defendant caused
> the plaintiff to suffer emotional distress; and, (4) that
> the emotional distress suffered by the plaintiff was so
> severe that no reasonable person could be expected to
> endure it.

Syl. Pt. 3, *Travis v. Alcon Lab., Inc.*, 202 W. Va. 369, 504 S.E.2d 419 (1998).  The West Virginia

Supreme Court has recognized that this tort is a difficult fact pattern to prove and "[t]he law

intervenes only where the distress is so severe that no reasonable [person] could be expected to

endure it." *Hines v. Hills Department Stores, Inc.*, 193 W. Va. 91, 95, 454 S.E.2d 385, 389 (1994)

(quoting Restatement (Second) of Torts § 46, cmt. (j) (1965); other citation omitted). "[S]trict proof

-11-

of unprecedented and extreme misconduct" is demanded in these cases because, "where no physical injury accompanies the wrong, the tort of outrage is a slippery beast, which can easily get out of hand without firm judicial oversight." *Tanner*, 194 W. Va. at 651, 461 S.E.2d at 157 (quoting *Keyes v. Keyes*, 182 W. Va. 802, 805, 392 S.E.2d 693, 696 (1990); footnote omitted).  The court further has indicated that it is "almost impossible . . . to define what will make a case of outrageous conduct. Instead, [the court will] define what it is not on a case-by-case basis." *Hines*, 193 W. Va. at 96, 454 S.E.2d at 390.  Conduct by a defendant which "is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, [overzealous], or negligent does not constitute outrageous conduct." *Id*. (quoting  *Courtney v. Courtney*, 186 W. Va. 597, 602, 413 S.E.2d 418, 423 (1991)).[5]

In reviewing a number of cases decided under West Virginia law, the Court in *Garrett v. Viacom, Inc.*, No. Civ. A. 1:03CV22, 2003 WL 22740917, *5 (N.D. W. Va. Aug. 27, 2003), noted that few cases had found the "extreme and outrageous" standard was met.  One case found a jury question existed whether the defendant should be held liable for falsely labeling the plaintiff a child molester and rapist. *Bell v. National Republican Cong. Comm.*, 187 F. Supp.2d 605, 618 (S.D. W. Va. 2002).  Another case held a wife sufficiently alleged a claim for outrage where her husband's employer required her to sign a proposal in which the employer would agree to transport her seriously injured husband to receive medical care if she would not treat the transport as an admission of liability for her husband's accident. *Miller v. SMS Schloemann-Siemag, Inc.*, 203 F. Supp.2d 633, 638-40 (S.D. W. Va. 2002).

---

[5]*Rev'd on other grounds,* 190 W. Va. 126, 437 S.E.2d 436 (1993).

On the other hand, there have been a number of decisions which have found a defendant's conduct is not outrageous.  For instance, in *Johnson v. Hills Department Store*, 200 W. Va. 196, 201, 200-01, 488 S.E.2d 471, 475-76 (1997), the Court held there was insufficient evidence of outrageous conduct where a young child witnessed her mother being accused of shoplifting.  Likewise, in *Keyes v. Keyes*, 182 W. Va. 802, 805, 392 S.E.2d 693, 696 (1990), the Court held that the defendants' hateful actions in excluding the plaintiff from participating in his father's funeral and taking his father's personal property was not so terrible as to be considered outrageous under the law. *See also Garrett*, 2003 WL 22740917, at *5 (finding no outrageous conduct where the defendant cable television network aired a series of prison music programs which included an inmate singing a song about killing the plaintiffs' family member); *Burgess v. Gateway Comm., Inc.-WOWK-TV*, 26 F. Supp.2d 888, 894 (S.D. W. Va. 1988) (finding no outrageous conduct where a supervisor was alleged to have breached an oral contract, occasionally made fun of the plaintiff's speech impediment, questioned the plaintiff's job performance in front of others, used vulgar language, and warned employees not to lodge complaints over his head).

In this case, the Court finds Plaintiff's allegations fall in line with those cases which found the alleged conduct was not outrageousness under the law.  Here, Plaintiff asserts she approached Dr. Prunty after the class had ended to discuss her hearing impairment.  Although one other student accompanied Plaintiff, there is no allegation that the conversation occurred before the class or any others.  Thus, any public humiliation or embarrassment was minimal.  During the conversation, Plaintiff claims that Dr. Prunty ridiculed her and questioned her ability to properly assess a patient's health in light of her hearing impairment.  Plaintiff also broadly asserts Dr. Prunty

spoke in a hostile and demeaning tone.  Assuming these allegations to be true, the Court finds they are insufficient as a matter of law to constitute outrageous conduct.  Although the alleged conversation may be considered mean-spirited, insulting, thoughtless, and hurtful, it is not the type of conversation that makes reasonable people think to themselves that Dr. Prunty acted outrageously. It simply does not rise to such an extreme level.  Therefore, the Court **GRANTS** Defendant's motion to dismiss Count III against Dr. Prunty.

### III.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion with respect to Plaintiff's claims under the ADA and Rehabilitation Act, **GRANTS** the motion with respect to Dr. Prunty being individually liable in Count II, and **GRANTS** the motion with regard to Plaintiff's claim for Intentional Infliction of Emotional Distress [doc. no. 46].  As no claims remain against Dr. Prunty, she is dismissed from this action.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        September 21, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE